UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

NICHOLAS KING,

              Petitioner,                          Case No. 2:14-cv-100

v.                                          Honorable R. ALLAN EDGAR

JEFFREY WOOD,

              Respondent.

_____/

### MEMORANDUM AND ORDER

Petitioner filed this petition for writ of habeas corpus challenging his jury conviction for two counts of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, two counts of torture, Mich. Comp. Laws § 750.85, and two counts of unlawful imprisonment, Mich. Comp. Laws § 750.349b.   Petitioner was sentenced to six to ten years imprisonment on the assault convictions, twenty-six to fifty years imprisonment on the torture convictions and nine to fifteen years imprisonment on the unlawful imprisonment convictions.

The Michigan Court of Appeals set forth the facts of this case:

Defendant's convictions arise out of the beating and kidnapping of Dontae Shuford and Deqwan Guest. Guest testified that one of defendant's accomplices kidnapped him at gunpoint and brought him to a house in Battle Creek. Once inside the house, defendant and three of his accomplices began beating and kicking Guest; additionally, defendant struck Guest in the back of the head with an object that Guest thought was a baseball bat. After assaulting Guest, defendant and his accomplices bound Guest's hands and feet and tied him to a pole in the basement of the home. Inside the basement, Guest saw that Shuford was already badly beaten and tied to a pole in a similar fashion as Guest was. Guest testified that defendant and his accomplices were upset with him and Shuford because they, along with two other men, had been accused of breaking into a home that

belonged to the sister of one of defendant's accomplices.   After confining Guest and Shuford in the home for several hours, defendant and his accomplices brought Shuford and Guest to a remote country field. Defendant and his accomplices left Shuford and Guest bound and gagged, with trash bags covering their heads.

Guest testified that he identified his attackers because he was familiar with them. He identified their faces as well as their voices. Shuford, meanwhile, testified that he could not identify his attackers; he testified that his attackers wore masks. Shuford was familiar with defendant and defendant's accomplices and testified that he did not recognize defendant's voice among the persons who attacked him.

PageID.944.

Petitioner argues that:

I.  Insufficient evidence exists to support his conviction for assault with intent to do great bodily harm less than murder as to Shuford.

II.  Insufficient evidence exists to support his convictions for torture as to Shuford and Guest.

III.  Insufficient evidence exists to support his convictions for unlawful imprisonment as to Shuford and Guest.

IV.  The trial court should have granted the defense motion for a directed verdict of acquittal as to Shuford and Guest.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United

2

States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's

3

application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the prosecution failed to present sufficient evidence at trial to support each of his convictions. The Michigan Court of Appeals rejected Petitioner's claims that there was insufficient evidence presented against Petitioner at trial to support his convictions.

> Defendant contends that the evidence produced at trial was insufficient for a rational jury to find that he committed the offenses that pertained to Shuford. We do not agree. We review de novo an appeal based on the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). While the articulated standard of review is de novo, appellate review of a claim for sufficiency of the evidence is deferential to the trial court. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). This Court "examine[s] the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine[s] whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Ericksen*, 288 Mich App at 196. Additionally, a reviewing court must defer to credibility determinations drawn by the finder of fact at trial, and "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400.

4

Defendant first alleges that there was insufficient evidence to support his conviction for assault with intent to do great bodily harm less than murder as to Shuford. "The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation and emphasis omitted). "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature." *Id.* (quotation omitted). A jury may infer a defendant's intent based on his actions and the circumstances in the case. *People v Lugo*, 214 Mich App 699, 709-710; 542 NW2d 921 (1995).

We find that there was sufficient evidence to establish that defendant committed the offense. As to the elements of the offense, Guest testified that Shuford's face was "brutally beaten" and that one of his eyes was completely swollen shut, which is sufficient evidence of the assault element. Moreover, given the severity of Shuford's facial injuries, a rational jury could infer that defendant intended to commit great bodily harm. See *Lugo*, 214 Mich App at 709-710. See also *People v Pena*, 224 Mich App 650, 659-660; 569 NW2d 871 (1997), mod in part on other grounds 457 Mich 885 (1998) (the severity of the victim's injuries can provide sufficient evidence from which a rational jury can find the defendant intended to do great bodily harm).

There was also sufficient evidence for a rational jury to find that defendant committed, or aided and abetted in committing the offense. Here, Guest and Shuford were brought to the same house and were beaten and bound in a similar fashion. Defendant had the same motivation for attacking Shuford as he did for attacking Guest, i.e., retaliation for an alleged burglary. Moreover, defendant indicated his complicity in the attack and confinement of Shuford by indicating to Shuford that "we gonna let you go." This statement was made while defendant was threatening death for Guest. Given the similarity of the attacks on Shuford and Guest, defendant's motivation, and Guest's testimony that defendant participated in assaulting him and made a statement indicating his involvement with Shuford, a rational jury could infer that that defendant participated in assaulting Shuford. See *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (circumstantial evidence and reasonable inferences arising therefrom can establish the offense). Furthermore, even though the extent of defendant's participation was unknown, the evidence was sufficient for a rational jury to find defendant guilty of the offense on an aiding and abetting theory. A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the

5

offense. MCL 767.39. "'Aiding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime . . . " *Carines*, 460 Mich at 757 (quotation omitted, alteration in *Carines*). Even assuming that defendant himself did not assault Shuford, there was sufficient evidence from which a rational jury could infer that defendant assisted his accomplices in assaulting Shuford. Indeed, the evidence supported that Shuford was assaulted in the same house, in the same manner, and for the same reason as Guest was assaulted. Given that defendant was actively involved in assaulting Guest, it was reasonable for a jury to infer that defendant, at a minimum, rendered assistance in assaulting Shuford. See *Nowack*, 462 Mich at 400 (a reviewing court "draw[s] all reasonable inferences . . . in support of the jury verdict."); *Carines*, 460 Mich at 757.

Defendant disagrees and notes that Guest testified that defendant arrived at the house after Guest and that Shuford was at the house before Guest arrived. Defendant concludes that because Guest testified that defendant arrived after Guest, and that Shuford was beaten before Guest arrived, a rational jury could not find that defendant participated in beating Shuford. We do not agree. Guest did not testify, nor was there any other evidence, that defendant was not present at the house before Guest arrived. Moreover, given the similarities in which defendant and Guest were beaten and bound, defendant's motivation for attacking both victims, and defendant's involvement in assaulting Guest, it was reasonable for a jury to infer that defendant participated in the crimes against Shuford. See *Nowack*, 462 Mich at 400; *Carines*, 460 Mich at 757.

Defendant next contends that the evidence was insufficient to support his conviction for torture as to Shuford. A defendant commits the offense of torture if, "with the intent to cause cruel or extreme physical or mental pain and suffering, [he or she] inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control . . . " MCL 750.85(1). To justify a conviction based on severe mental pain or suffering, the prosecution must present sufficient evidence that the defendant caused "'a mental injury thatresult[ed] in asubstantial alteration of mental functioning that [was] manifested in a visibly demonstrable manner . . . " *People v Schaw*, 288 Mich App 231, 234; 791 NW2d 743 (2010), quoting MCL 750.85(2)(d).

The evidence produced at trial was sufficient for a rational jury to find defendant guilty of torture as to Shuford. Shuford's face was "brutally

beaten" and he was left bound and gagged in a baseme nt for several hours. Thus, there was sufficient evidence of defendant's intent to commit torture. MCL 750.85(1). See *Lugo*, 214 Mich App at 709-710 (intent can be established by the defendant's actions). Additionally, Shuford testified that he was "traumatized" by the incident. Evidence that Shuford was traumatized was sufficient for a rational jury to find that Shuford suffered a severe mental injury that resulted in a substantial alteration of mental functioning. See *Schaw*, 288 Mich App at 235. In addition to a mental injury, MCL 750.85(d) requires that the injury was "caused by or resulting from," among other things, "[t]he threat that another person will imminently be subjected to death . . . " MCL 750.85(d)(iv). Here, Guest testified that defendant threatened to kill him while he was bound next to Shuford. This threat of imminent death was sufficient for a rational jury to find that defendant intended to and did inflict severe mental pain or suffering while Shuford was bound and gagged and in defendant's control. See MCL 750.85(d); *Schaw*, 288 Mich App at 235.

We also find that the evidence produced at trial was sufficient to support defendant's conviction for unlawful imprisonment as to Shuford. "[T]o be guilty of unlawful imprisonment under MCL 750.349b(1)(b), (1) a defendant must knowingly restrain a person, and (2) the restrained person must be 'secretly confined.'" *People v Railer*, 288 Mich App 213, 217; 792 NW2d 776 (2010). In this case, there was circumstantial evidence to find that defendant forcibly restrained Shuford by binding and gagging him. Again, even if defendant did not personally bind and gag Shuford, it was reasonable for a rational jury to infer that defendant was involved in binding and gagging Shuford, based on his involvement in binding Guest in a similar manner. See *Carines*, 460 Mich at 757 (circumstantial evidence and reasonable inferences arising therefrom can be used to establish the offense, and a defendant who renders assistance is guilty of the offense under an aiding and abetting theory). Moreover, there was evidence that defendant brought Shuford out of the house and that he left him bound and gagged in a desolate field. Thus, there was evidence from which a rational jury could find beyond a reasonable doubt that defendant knowingly restrained Shuford. MCL 750.349b(3)(a). There was also sufficient evidence for a rational jury to find the second element of the offense, i.e., that defendant "secretly confined" Shuford. "[T]he essence of 'secret confinement' as contemplated by the statute is deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament." *People v Jaffray*, 445 Mich 287, 309; 519 NW2d 108 (1994). Here, defendant participated in binding and gagging Shuford in the basement of a home in such a manner as to prevent him from leaving or calling out for help.

Defendant also participated in bringing Shuford, bound and gagged, to a desolate field. Consequently, there was sufficient evidence to find that defendant "secretly confined" Shuford and that he committed the offense of unlawful imprisonment. See *id*.

PageID.945-947.[1]

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two

---

[1]Respondent argues that Petitioner procedurally defaulted his claims as they apply to victim Guest. Petitioner arguably raised these claims in the lower court. The Michigan Court Appeals addressed the issues pertaining to Guest and rejected them under the same rationale as it rejected the issues pertaining to Shuford. As to the sufficiency of the evidence claim and directed verdict claim, the Michigan Court of Appeals found that those claims were abandoned by Petitioner for failing to develop them in his statement of questions and brief as they relate to victim Guest, but nevertheless found them to be without merit.

levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).  It is clear, based upon this standard, that the evidence was sufficient to establish that Petitioner committed the crimes of assault with intent to do great bodily harm less than murder, torture, and unlawful imprisonment.  The Michigan Court of Appeals decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In a similar factual claim, Petitioner argues that the trial court erred by not entering a directed verdict of acquittal on all charges against Petitioner.  The Michigan Court of Appeals rejected this argument.  The evidence presented at trial was sufficient to support Petitioner's convictions so a directed verdict of acquittal was not appropriate under the facts of this case.  Moreover, this claim is not cognizable in a habeas proceeding as it pertains to a matter of state law procedure.  A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988).  The appropriate inquiry is whether the trial court's ruling violated the Petitioner's constitutional rights.  *Estelle v. McGuire*, 502 U.S. 62 (1991).

There is a tension inherent in sufficiency of the evidence claims where the underlying conviction is a violation of state law. Generally speaking, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. State courts, after all "are the final arbiters of the [state] law's meaning and application" and this Court is not the appropriate forum to adjudicate such issues. *Summers v. Leis*, 368 F.3d 881, 892 (6th Cir. 2004) (alteration added). However, a habeas claim for sufficiency of the evidence does not request a federal court to review the correctness of state law, but instead, to review the evidence to insure that the due process guarantees of the Fourteenth Amendment have not been abridged by a state law conviction. Thus, while the Supreme Court has instructed us to conduct our habeas review "with explicit reference to the substantive elements of the criminal offense as defined by the state law," our role is not to reanalyze the state court's interpretation of state law. *Jackson*, 443 U.S. at 324, n. 16, 99 S.Ct. 2781. Rather, our review in such cases is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor. Further, relief is only available when the decision results in an objectively unreasonable application of federal law. *Taylor*, 529 U.S. at 409, 120 S.Ct. 1495. In other words, we may only review the state court decision to determine whether there was an unreasonable application of federal law, not simply an incorrect application of federal law. *Id.*

*Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). Petitioner has failed to show that his Constitutional rights were violated by the denial of his motion for a directed verdict. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability

should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated:    6/3/2016                          /s/ R. Allan Edgar
                                            R. ALLAN EDGAR
                                            UNITED STATES DISTRICT JUDGE